In re FALLS BUILDING, LTD., Debtor.

Arthur TEMLOCK, Thomas Miller, Frank Sisko, J. Phillip Davis and James Baker, Plaintiffs and Counter–Defendants,

v.

FALLS BUILDING, LTD., Defendant and Counter–Plaintiff,

and

Lloyd Bush and Lincoln National Pension Insurance Company, Defendants.

Bankruptcy No. 3–87–00823.
Adv. No. 3–88–0042.

United States Bankruptcy Court, E.D. Tennessee.

Nov. 21, 1988.

Patrick, Beard & Richardson, P.C., Gary R. Patrick, Chattanooga, Tenn., for plaintiffs and counter-defendants.

Heiskell, Donelson, Bearman, Adams, Williams & Kirsch, Clive W. Bare, David E. Fielder, Stephen E. Roth, Knoxville, Tenn., for defendant and counter-plaintiff, Falls Bldg., Ltd.

Walker & Walker, P.C., John A. Walker, Jr., Knoxville, Tenn., for defendant, Lloyd Bush.

Wildman, Harrold, Allen, Dixon & McDonnell, Jennie D. Latta, Memphis, Tenn., for defendant, Lincoln Nat. Pension Ins. Co.

## MEMORANDUM

RICHARD S. STAIR, Jr., Bankruptcy Judge.

The court has three issues before it for resolution: (1) Whether a "Complaint For Interpleader" filed by the plaintiffs and now counter-defendants, Arthur Temlock, Thomas Miller, Frank Sisko, J. Phillip Davis, and James Baker (plaintiffs) in the United States District Court for the Eastern District of Tennessee on February 16, 1988, as amended February 25, 1988, violated the automatic stay of 11 U.S.C.A. § 362(a)(1) (West Supp.1988); (2) If plaintiffs' interpleader action violated the stay, whether Falls Building, Ltd., the debtor and an original defendant and now counter-plaintiff (Falls Building, Ltd. or debtor), is entitled to sanctions pursuant to 11 U.S.C. A. § 362(h) (West Supp.1988); and (3) Whether the debtor is entitled to a judgment against plaintiffs for interest, and costs of collection, including attorney's fees, for an installment investment contribution due January 15, 1987.

All issues raised in plaintiffs' "Complaint For Interpleader," as amended, have been resolved.[1] Only those matters raised by a

---

1. The two other defendants named in the "Complaint For Interpleader," Lloyd Bush and Lincoln National Pension Insurance Company, have been dismissed: Lincoln National was dismissed by an order entered June 2, 1988; Lloyd

counterclaim filed by the debtor on March 21, 1988, remain at issue. The trial of the debtor's counterclaim was held October 26, 1988.

The issues before the court involve mixed core and noncore matters. 28 U.S.C.A. § 157(b)(2) and (c)(1) (West Supp.1988). The parties have consented to the entry of appropriate orders and judgments by the bankruptcy judge with respect to all non-core issues. 28 U.S.C.A. § 157(c)(2) (West Supp.1988).

I

Plaintiffs are limited partners in Falls Building, Ltd., a Tennessee limited partnership.[2] Culp & Associates, Ltd., also a Tennessee limited partnership, and Lloyd Bush are the general partners. Culp & Associates, Ltd. is the managing general partner. The limited partnership was created to acquire and renovate a commercial office building in Memphis, Tennessee.

Plaintiffs acquired their limited partnership interests in the debtor in August or September, 1983. Under the terms of the "Restated Certificate And Limited Partnership Agreement Of Falls Building, Ltd." (Limited Partnership Agreement), each plaintiff was required to contribute to the capital of the partnership a cash investment of $52,000. Of this amount, $600 was required to be paid upon execution of the Limited Partnership Agreement with the remaining $51,400 to be paid in three annual installments: $39,000 on January 15, 1985; $8,000 on January 15, 1986; and $4,400 on January 15, 1987. Section 7(c) of the Limited Partnership Agreement provides that the investment obligation of each limited partner is to be evidenced by a "Negotiable Promissory Note" (note).

As required by the Limited Partnership Agreement, each plaintiff executed a note in the amount of $51,400 payable to the order of the debtor. These notes were pledged in September, 1983, together with notes of other limited partners, to First National Bank of Louisville, Kentucky (First National) as part of the collateral package securing a construction loan for the renovation of the Falls Building office project. In September, 1985, the debtor entered into an agreement with its permanent lender, Lincoln National Pension Insurance Company (Lincoln National), and the project's general contractor, Rentenbach Constructors Incorporated (Rentenbach), to refinance both the First National construction loan and an indebtedness owed by the debtor to Rentenbach for additional construction costs.

In connection with the refinancing of its construction loan, First National released its security interest in the notes executed by the limited partners. The notes were subsequently pledged to Rentenbach as part of its collateral package to secure a promissory note in the original principal amount of $1,155,189.73 (the Rentenbach Note). On September 17, 1985, each plaintiff was forwarded a letter signed by First National and the debtor, by its general partners, advising that their notes had been assigned to Rentenbach and that all future note payments should be made to Rentenbach "until such time as you receive written notice from [Rentenbach] otherwise."

On December 12, 1986, plaintiffs, by letters signed on behalf of the debtor by its managing general partner Culp & Associates, Ltd. and Rentenbach, were notified that in settlement of claims of Rentenbach the $1,155,189.73 Rentenbach Note and collateral had been purchased by Lloyd Bush "in his individual capacity (not as a general or limited partner of Falls Building, Ltd.)." By this letter plaintiffs were also notified that "your promissory note has now been assigned to Mr. Bush and the payment on your note which is due January 15, 1987, in the amount of $4,400 should be made to the following address unless you receive written notice from Mr. Bush otherwise...."

Bush was dismissed by an order entered August 11, 1988.

**2.** Under the terms of the "Restated Certificate And Limited Partnership Agreement Of Falls Building, Ltd." dated October 1, 1983, plaintiffs are designated "Additional Limited Partners." For purposes of this Memorandum, plaintiffs will be categorized generally as "limited partners."

Neither the September 17, 1985 letter (informing plaintiffs of the assignment of their notes to Rentenbach) nor the December 12, 1986 letter (relative to the assignment of the Rentenbach Note and collateral to Lloyd Bush) contained documentation evidencing the assignment of plaintiffs' notes.

The first two payments required under the terms of the notes were made by plaintiffs. The final payments of $4,400 due January 15, 1987, were not paid when due.

## II

On November 3, 1986, the debtor's general partners forwarded a memorandum to the limited partners (Memorandum). This Memorandum, indicating financial difficulty on the part of the debtor, informed plaintiffs and the other limited partners that Lincoln National had agreed not to foreclose its mortgage on the debtor's property provided that an infusion of additional capital in the amount of $2,000,000 be made to the limited partnership. The Memorandum further informed the limited partners that the general partners proposed to raise the additional capital by requiring a further investment from each limited partner in the amount of $25,642. The recapitalization proposal advanced by the general partners also provided for a special allocation of losses in the amount of $459,000 to Lloyd Bush beginning June 15, 1986.

Plaintiffs, upon receipt of the November 3, 1986 Memorandum, employed an attorney, Vick Speed, to represent their interests. Mr. Speed testified that at the time of his employment disputes between the debtor's general partners and its limited partners centered upon three areas: (1) the special loss allocation the debtor proposed to extend to Lloyd Bush and its adverse tax impact on the limited partners; (2) the method of refinancing the mortgage indebtedness with Lincoln National to keep it from foreclosing; and (3) the debtor's request for an additional capital contribution in excess of $25,000 from each limited partner. Mr. Speed further testified that in his opinion the special loss allocation proposed

by the general partners required an amendment to the Limited Partnership Agreement and that he advised plaintiffs of a possible right of offset relative to their $4,400 investment contribution due January 15, 1987, if Lloyd Bush took the special loss allocation.

On December 12, 1986, Mr. Speed wrote the debtor's attorneys, Heiskell, Donelson, Bearman, Adams, Williams & Kirsch, P.C. (Heiskell, Donelson), notifying them that he represented the plaintiffs and expressing plaintiffs' objections to the proposed special loss allocation to Lloyd Bush. On April 1, 1987, Mr. Speed joined the Chattanooga law firm of Luther, Anderson, Cleary, Ruth & Speed, P.C. (Luther, Anderson), which at that time took over the representation of plaintiffs.

Amidst its financial difficulties with Lincoln National and the disputes with its limited partners, the debtor filed its voluntary petition under Chapter 11 of title 11 of the United States Code on April 2, 1987.

By letter dated April 6, 1987, Culp & Associates, Ltd., the debtor's managing general partner, advised the limited partners of Lloyd Bush's agreement to rescind the special loss allocation. Mr. Culp's letter further requested payment of the $4,400 final investment installment by those limited partners who had not yet made that payment and advised the limited partners that the debtor had filed a Chapter 11 petition. This letter, written on Culp & Associates' letterhead, does not specify to whom the $4,400 payment is to be made.

The debtor filed its Statement of Affairs and Schedules on April 10, 1987. Schedule B–2 to its petition, entitled "Personal Property," lists as an asset of the debtor at subparagraph p. "Limited Partner Notes Receivable" in the amount of $189,200.

Plaintiffs, in April, 1987, upon advice of counsel, deposited their $4,400 installment payments due January 15, 1987, in an interest bearing escrow account maintained by Luther, Anderson.

On December 3, 1987, David E. Fielder, one of the debtor's attorneys, wrote each plaintiff concerning the delinquent $4,400

installment payments due January 15, 1987. Representative of these letters is the one forwarded plaintiff Arthur Temlock, which provides in part:

December 3, 1987
Dr. Arthur Temlock

.    .    .    .    .

Re: Default on Final Capital Contribution to the Falls Building, Ltd.

Dear Dr. Temlock:

This firm represents Falls Building, Ltd. (the "Partnership") in its Chapter 11 bankruptcy proceeding filed in the United States District Court in Knoxville, Tennessee.

The records of the Partnership indicate that one of the assets of the Partnership is the final payment on your investor promissory note which you executed evidencing your obligation to pay for your Partnership interest. This payment totals $4,400....

Please understand that the Partnership would prefer not to take any action against you for failing to make your final capital contribution. However, if you fail to make this payment, the Partnership will have no alternative but to pursue the legal remedies available to it.

If you have already made your final capital contribution, we apologize for this letter and thank you for your payment. If, however, you have not made your final capital contribution, please do so immediately. Your check should be made payable to Falls Building, Ltd. and forwarded to me.

Sincerely,
/s/ David E. Fielder
David E. Fielder

On December 11, 1987, after receipt of Mr. Fielder's letter of December 3, 1987, Michael Luhowiak, an attorney with Luther, Anderson, called Mr. Fielder requesting assurances as to the proper payee for the January 15, 1987 payment. Mr. Luhowiak testified that Mr. Fielder advised him that he (Fielder) thought he could obtain the required assurances. Mr. Luhowiak further testified that he never received any assurances from Mr. Fielder and did not know whether plaintiffs should make their January 15, 1987 payments to Lloyd Bush, Falls Building, or Lincoln National.

Also on December 11, 1987, Patrick Taintor, another member of Luther, Anderson, wrote Mr. Fielder confirming Mr. Fielder's conversation with Mr. Luhowiak and advising as to plaintiffs' posture relative to payment of the January 15, 1987 installment. Mr. Taintor's letter provides in material part:

December 11, 1987
David E. Fielder, Esquire
Heiskell, Donelson, Bearman, Adams, Williams & Kirsch
Suite 600 Plaza Tower
800 Gay Street
Knoxville, Tennessee 37929
RE: Falls Building, Ltd.
Dear Mr. Fielder:

This letter will confirm your telephone conversation with Mike Luhowiak this date.

This firm represents Arthur A. Temlock, M.D. Dr. Temlock has forwarded to us your letter of December 3, 1987, demanding payment of Dr. Temlock's final capital contribution.

This firm also represents four other limited partners in Falls Building, Ltd.—Dr. James Davis, Dr. Thomas P. Miller, Dr. Frank E. Sisko and Mr. James B. Baker. Upon our advice and counsel, each of the doctors have [sic] paid $4,400.00 into a special escrow account set up by this firm in April, 1987. This account, with accrued interest, currently has a balance in excess of $18,000.00. Fred Swindoll and Vick Speed of this firm are the only authorized signatories on this account. As of this writing, Mr. Baker has not paid any money into this escrow account. However, he has contacted us regarding this matter, and is willing to take whatever action we advise.

These funds were paid into escrow due to the numerous uncertainties involved in this matter. The Falls Building, Ltd. is the payee under the promissory note for which you are demanding payment. Lincoln National Life Insurance Company was, and still is, threatening foreclosure.

We surmise that, as part of its financing package, the partnership's interest in the promissory notes may have been assigned to Lincoln National as collateral for the partnership's obligations. In late 1986, our clients received notice from the partnership, indicating the obligation under this note had been assigned to Lloyd Bush. Shortly before the money was paid into escrow, the partnership filed Chapter 11 proceedings in the Bankruptcy Court.

In brief, we have substantial concern, which has been communicated to our clients, as to whom this obligation should be paid. There seems [sic] to be several competing interests for this obligation. Until these matters are clarified, by us or a court, our clients will be at a substantial risk if payment is made to any one party.

. . . .

Our clients are ready, willing and able to pay the appropriate payee, as evidenced by their tender of this money into our special escrow account. However, as stated above, we perceive a number of problems.

It is our understanding that you will be forwarding to us a recent memorandum outlining the status of your negotiations with Lincoln National, the status of the reorganization proceedings and the status of the project in general. You have also indicated that you may be able to allay our concerns regarding the proper note payee. Finally, you have indicated your willingness to discuss these matters further with us and/or our clients. We will look forward to so doing. Accordingly, we would appreciate your contacting us at your earliest convenience to address and discuss these concerns.

We are looking forward to hearing from you regarding this matter.

Very truly yours,
LUTHER, ANDERSON, CLEARY
RUTH & SPEED, P.C.
Patrick C. Taintor [3]

On January 5, 1988, Mr. Taintor received a response to his December 11, 1987 letter from another attorney with Heiskell, Donelson, H. Wynne James, advising "that there is no doubt but that the funds are owed to Lloyd A. Bush." On January 15, 1988, Mr. James again wrote Mr. Taintor advising that Heiskell, Donelson "represents Falls Building, Ltd. and Lloyd A. Bush in connection with amounts owed by your clients under several notes made to the order of Falls Building, Ltd." Mr. James' January 15, 1988 letter further advises "that if we do not hear from you during the week beginning January 18, 1988, we will proceed to take such legal action as is necessary to collect the amounts owed by your clients."

Michael Luhowiak, in addition to the testimony previously discussed, also testified that upon receipt of the January 15, 1988 letter from Mr. James, he directed Pamela McNutt, an attorney in his office, to investigate the most appropriate method for ascertaining the entity due the $4,400 payments; that Ms. McNutt's research indicated it was proper to file an interpleader action in the United States District Court; that he was aware of the automatic stay under § 362(a) of the Bankruptcy Code; that his research indicated the propriety of an interpleader action notwithstanding the automatic stay; and that it was certainly not his intention that plaintiffs harass Falls Building by the filing of the interpleader action. Mr. Luhowiak testified that all he was interested in was determining to whom his clients' funds should be paid.

Plaintiffs filed their "Complaint For Interpleader" in the district court on February 16, 1988. On February 25, 1988, they filed the following additional pleadings: an "Amended Complaint For Interpleader Pursuant to Rule 15(A)," a "Motion For Leave To Make Deposit In Court," and a "Motion For Temporary Restraining Order And To Set Preliminary Injunction Hearing." Also on February 25, 1988, the district court entered a Temporary Restraining Order restraining defendants "from instituting or

3. The copy of this letter filed during the trial does not bear Mr. Taintor's signature. The parties, however, stipulated the authenticity of the letter and its receipt by Mr. Fielder.

prosecuting any proceeding in any State or United States court to effect collection under the notes which are the subject matter of this interpleader action." The Temporary Restraining Order further provided for plaintiffs to deposit with the clerk of the district court the sum of $22,000, representing the five January 15, 1987 payments due from plaintiffs.

On March 8, 1988, the debtor filed a "Motion To Dismiss, Or In The Alternative, To Transfer To The Bankruptcy Court." On March 10, 1988, District Judge James H. Jarvis filed an Order transferring plaintiffs' interpleader action to the bankruptcy court. In the Memorandum Opinion accompanying his Order, Judge Jarvis, referring to § 362(a)(1) of title 11,[4] made the following findings:

> In the instant case, it is undisputed that the final payment on the notes was due in January, 1987. This interpleader action, therefore, "could have been commenced" any time after the final payment was due on these notes in January, 1987, which was several months before [Falls Building] filed its Chapter 11 petition in April, 1987. It is also important to note that all of the events which arguably led to the confusion as to whom plaintiffs should pay because of various assignments of the notes (of which plaintiffs were timely notified) occurred before January, 1987. Accordingly, the court finds that the facts of the case *sub judice* falls directly within the terms of 11 U.S.C. § 362(a)(1) so that the automatic stay provision is applicable to this case.
>
> Moreover, the court is of the opinion that this automatic stay remains in effect until specifically modified or lifted pursu-

ant to the standards of 11 U.S.C. § 362(d)....

> Likewise, this court can only conclude that it is equally without power to proceed in the instant case because plaintiffs have not requested that the automatic stay be lifted in [Falls Building's] bankruptcy proceeding....

*Memorandum Opinion*, March 10, 1988, at 2–4. (citation omitted).

Upon transfer of this proceeding to the bankruptcy court, this court, by an order entered March 28, 1988, directed the sum of $22,902.16 be deposited in the Clerk's Registry account.[5] Thereafter, upon representations made by attorneys for the debtor, Lincoln National, and Lloyd Bush, at an April 21, 1988 status conference, this court, on June 2, 1988, entered an order directing payment of $22,000, representing the January 15, 1987 installments due from the five plaintiffs, to Lloyd Bush. The $902.16 deposited to the Registry account on March 28, 1988, together with additional accrued interest, remains undistributed.

### III

### DEBTOR'S ENTITLEMENT TO INTEREST AND ATTORNEY'S FEES ON PLAINTIFFS' NOTES

The debtor contends it is entitled to an award of interest and attorney's fees attributable to the plaintiffs' failure to make the required $4,400 payments due January 15, 1987.

Paragraph 7 of the Limited Partnership Agreement provides in material part:

> 7. *Capital Contributions.*
>
> ....
>
> (c) *Additional Limited Partners—*
> Each Additional Limited Partner shall

---

**4.** Bankruptcy Code § 362 provides in material part:

> (a) Except as provided in subsection (b) of this section, a petition filed under section 301 ... operates as a stay, applicable to all entities, of—
> (1) the commencement or continuation, including the issuance or employment of process, of a judicial, administrative, or other action or proceeding against the debtor that was or could have been commenced before the commencement of the case under this

title, or to recover a claim against the debtor that arose before the commencement of the case under this title;

11 U.S.C.A. § 362(a)(1) (West Supp.1988).

**5.** This sum represents the $22,000 plaintiffs sought to interplead into the district court plus an additional sum which the court presumes represents interest from April, 1987, the date plaintiffs established their escrow account with Luther, Anderson.

contribute to the capital of the Partnership the sum of $52,000 for each Unit of his Initial Investment, such amount to be contributed in cash as follows:

(i)(A) $600 of each Unit to be delivered to the Partnership upon the execution of this Agreement;

(B) $39,000 of each Unit on January 15, 1985;

(C) $8,000 of each Unit on January 15, 1986; and

(D) $4,400 of each Unit on January 15, 1987.

(ii) The obligation of each Additional Limited Partner to make payments of portions of the Initial Investment pursuant to Paragraphs 7(c)(i)(B), (C) and (D) above shall be evidenced by his Negotiable Promissory Note, and payments made thereunder shall be in cash....

(d) *Nature of Contributions*—No Limited Partner shall be required to contribute any capital to the Partnership other than as provided in Paragraph 7(c) hereof or to lend any funds to the Partnership. No interest shall be paid on any capital contributed to the Partnership pursuant to this Paragraph 7 and, except as otherwise provided herein, no Partner may withdraw his capital contributions.

(e) *Defaults*—Subject to the provisions of Paragraph 7(c) above, if an Initial or Additional Limited Partner shall fail to make any capital contribution when due, and shall continue in default for a period of ten (10) days after written notice from the General Partners to said Initial or Additional Limited Partner ("Defaulting Limited Partner"), he shall be in default under this Agreement and while such default continues, the Partnership (without prejudice to any other right of the Partnership) may elect, in the sole and absolute discretion of the General Partners.... (iii) to sue such Defaulting Limited Partner to collect the unpaid amount of any such capital contribution (together with interest thereon from the date such contribution was due at the highest lawful rate in the State of Tennessee and collection expense, including the reasonable fees and disbursements of counsel for the Partnership)....

Plaintiffs' obligations under the Limited Partnership Agreement arise out of the provisions of paragraph 7(c). Each plaintiff was required to contribute the sum of $52,000 as an initial investment, in cash, with all but $600 of that investment to be paid on an installment basis. As provided in paragraph 7(c)(ii) of the Limited Partnership Agreement, plaintiffs' obligations relative to the $51,400 installment portion of their investment are evidenced by their respective notes.

In conformity with paragraphs 7(c) and (d) of the Limited Partnership Agreement, each note provides for payment of the three annual installment payments but makes no provision for the payment of interest on the principal amount of any installment. In conformity with the default provisions of paragraph 7(e)(iii), each note provides that "in the event ... this Note is placed in the hands of any attorney for collection, Maker agrees to pay all costs of collection ... including but not limited to court costs, reasonable attorney fees, and disbursements." However, the provisions of paragraph 7(e)(iii) relative to interest upon default are not carried forward to the notes. The default provisions of paragraph 7(e)(iii) are "[s]ubject to the provisions of Paragraph 7(c)." The court can construe the quoted portion of paragraph 7(e) in but one way: the provisions of paragraph 7(e)(iii), if they are to be given effect, must be perpetuated in the notes, which, in accordance with paragraph 7(c), evidence each limited partner's investment obligation. The failure to include a provision in the notes for the recovery of interest upon default prohibits an award of interest to the owner and holder of the notes.

■ The debtor, however, is entitled to neither interest nor attorney's fees for a more fundamental reason. It is undisputed that the notes executed by plaintiffs were assigned first to Lincoln National, then to Rentenbach, and finally on December 12, 1986, to Lloyd Bush. Upon assignment of the notes, the debtor no longer retained the right to collect the annual installment obli-

gations.[6] Lloyd Bush, as the holder of each note on January 15, 1987, was the only party entitled to proceed against plaintiffs in the event of default, as to the $4,400 installment payments, interest (had the notes so provided), and costs of collection, including attorney's fees.

The debtor's posture relative to its ability to now collect interest and attorney's fees is contrary to the terms of the assignment of the notes to Rentenbach and Bush. A "Note Pledge Agreement" entered into September 13, 1985, by the debtor and Rentenbach provides in material part:

1. *Pledge.* [Falls Building] hereby pledges, assigns, conveys and transfers and continues to pledge, assign, convey and transfer to Pledgee, and hereby grants, and continues to grant to Pledgee, a security interest in, and has heretofore delivered to the Pledgee, the Collateral Notes, duly endorsed to Pledgee, and hereby assigns and continues to assign all of Pledgor's right, title and interest in and to the payment of principal and interest thereunder, and the proceeds of any collateral security given as security for the payment of the Collateral Notes. The Collateral Notes are pledged to Pledgee and delivered as security for the obligations of the Pledgor to the Pledgee.

A separate "Assignment" executed in behalf of the debtor by its general partners accompanies the September 13, 1985 "Note Pledge Agreement." This "Assignment" provides:

The undersigned FALLS BUILDING, LTD. hereby unconditionally assigns to [Rentenbach] all of its right, title and interest in and to those certain promissory notes payable to the order of Falls Building, Ltd. listed and described on *Exhibit A* attached hereto.[7]

Clearly, between the provisions of the "Note Pledge Agreement" and "Assignment," the debtor transferred all of its interest in the notes executed by plaintiffs, including any claim to attorney's fees upon default, to Rentenbach. Rentenbach, thereafter, on December 12, 1986, executed the "Assignment Of Note And Collateral Security" in favor of Lloyd Bush which provides in part:

### ASSIGNMENT OF NOTE AND COLLATERAL SECURITY

For value received, [Rentenbach] hereby assigns and transfers to LLOYD A. BUSH, without recourse, the attached Promissory Note executed by Falls Building, Ltd. ... dated September 13, 1985 ... in the original principal amount of ... [$1,155,189.73], together will [sic] all of [Rentenbach's] right, title and interest in the Note and in the ... (ii) Note Pledge Agreement dated September 13, 1985; (iii) the Collateral Notes as defined in the Pledge Agreement; and ... [Rentenbach] declares that it is the true and lawful holder of the Note, that this Assignment has been authorized by all requisite corporate action and that Lloyd A. Bush is hereby subrogated to and vested with all of the rights, powers and privileges of [Rentenbach] with respect to the Note and the foregoing collateral documents....

The debtor completely divested itself of any interest in the notes executed by plaintiffs. It has no recourse against plaintiffs for interest or attorney's fees either under the terms of the notes or under the provisions of the Limited Partnership Agreement.

---

**6.** This conclusion is amply supported by case law and commentaries. *See Contemporary Mission, Inc. v. Famous Music Corporation,* 557 F.2d 918, 924 (2nd Cir.1977) ("It is true, of course, as a general rule, that when rights are assigned, the assignor's interest in the rights assigned comes to an end."); *Estate of Presley v. Russen,* 513 F.Supp. 1339, 1350 (U.S.D.C.D.N.J.1981) ("An assignment passes legal and equitable title to the property...."); *Coughlin v. Commonwealth of Pennsylvania (In re Coughlin),* 48 B.R.

191 (Bankr.E.D.Pa.1985) ("The purpose of an assignment is to divest the assignor of a right."). *See also* 3 *Williston on Contracts* § 413, p. 55 (1960); Restatement (Second) of Contracts § 317 comment a, illustration 1 (1981).

**7.** Exhibit A contains an itemized list of 50 notes assigned to Rentenbach. Among these notes are those executed by plaintiffs.

For the reasons stated herein, the debtor cannot prevail against plaintiffs on its counterclaim for interest and attorney's fees attributable to the five $4,400 investment payments due from plaintiffs on January 15, 1987.

## IV

## VIOLATION OF THE AUTOMATIC STAY

■ Through its counterclaim, the debtor also contends that plaintiffs, by the filing of their "Complaint For Interpleader" and by obtaining the Temporary Restraining Order violated the automatic stay of Bankruptcy Code § 362(a)(1). The debtor thus argues that sanctions should be imposed against plaintiffs pursuant to 11 U.S.C.A. § 362(h) (West Supp.1988).[8] Plaintiffs disagree, arguing that the filing of an interpleader action is governed by 28 U.S.C.A. § 1335 (West 1976) which provides for original jurisdiction in the district court of any civil action of interpleader. Plaintiffs contend the law is unsettled in this circuit as to whether the filing of an interpleader action violates the stay.

In support of their position, plaintiffs rely upon *NLT Computer Services Corp. v. Capital Computer Systems, Inc.,* 755 F.2d 1253 (6th Cir.1985). In *NLT,* the Sixth Circuit vacated the judgment of the district court rendered in an interpleader action subsequent to the filing of an involuntary bankruptcy petition against the debtor, Capital Computer Systems, Inc.[9] The appellate court found that the stay provisions of § 362 were applicable to the district court and that its action in summarily withdrawing the reference and vacating the stay violated those provisions of the Bankruptcy Code. The Sixth Circuit made the following material findings:

> The stay provisions of section 362 are automatic and self-operating and those

who have knowledge of the pendency of a bankruptcy action and stay are bound to honor the stay unless and until it is properly lifted.

> . . . .

> [W]e see nothing in the interim rule or in the Bankruptcy Code which could ever be construed as authorizing the continuation of the interpleader suit without some appropriate action having first been taken in the bankruptcy case itself. In our view, the trial judge in these proceedings was in a position no different from that of any judge presiding in any other pending federal, state, or local court proceedings which could affect the assets of the bankrupt. It certainly cannot seriously be claimed that were such a suit pending in another district court or in a state court, the judge of that court could proceed to decide that suit on the merits without a motion to lift the stay under 11 U.S.C. § 362(d) having first been filed in the bankruptcy proceeding itself.

> . . . .

> We, therefore, believe that the trial judge was without power to proceed, at least based on our understanding of the record. Accordingly, we vacate the judgment of the district court and remand for such further proceedings as may be appropriate. Because of our own lack of record, we are unable to finally determine the effect of the involuntary proceedings on the power of the district judge to proceed in the interpleader action.

*NLT,* 755 F.2d at 1258–1259 (citations omitted).

Plaintiffs argue that under the authority of *NLT* there is no binding precedent in this circuit on the applicability of the automatic stay to an interpleader action.[10] This

---

**8.** Bankruptcy Code § 362(h) provides:

(h) An individual injured by any willful violation of a stay provided by this section shall recover actual damages, including costs and attorney's fees, and, in appropriate circumstances, may recover punitive damages.

**9.** *NLT Computer Services Corp. v. Capital Computer Systems, Inc.,* 31 B.R. 960 (Bankr.M.D. Tenn.1983).

**10.** Plaintiffs obviously rely exclusively upon the observation of the court that "we are unable to finally determine the effect of the involuntary proceedings on the power of the district judge to

court is of the opinion that *NLT* speaks directly to the applicability of the automatic stay to an interpleader action and leaves little doubt that such an action is stayed by the filing of a bankruptcy petition. Furthermore, plaintiffs' determination that the law is unsettled in this area by itself constitutes a sufficient basis to seek modification of the stay pursuant to § 362(d). Additionally, plaintiffs overlook the fact that their "Complaint For Interpleader" was followed by a motion for a temporary restraining order. By this motion, plaintiffs sought and obtained a Temporary Restraining Order restraining the debtor from "instituting or prosecuting any proceeding ... to effect collection under the notes...."

Plaintiffs, in their pretrial brief, cite authority from other circuits in support of their argument that the interpleader action is not violative of the automatic stay.[11] This court, however, is bound by decisions of the Sixth Circuit. Finally, the district court by its March 10, 1988 Memorandum Opinion has already determined that the stay of § 362(a)(1) is applicable to plaintiffs' actions and that it was "without power to proceed" because plaintiffs had not requested termination of the automatic stay in the debtor's bankruptcy case. The district court, premising its findings upon the Sixth Circuit's decision in *NLT,* has established the law of this case respecting the applicability of § 362.

Plaintiffs, by the filing of their interpleader action and by seeking and obtaining a Temporary Restraining Order violated the automatic stay.

## V

## PLAINTIFFS' LIABILITY UNDER § 362(h)

The final issue for determination by the court is whether plaintiffs' filing of their interpleader action and motion for a tempo-

rary restraining order amount to "willful" violations of the automatic stay. If so, the debtor is entitled to actual damages, including costs and attorney's fees, and, if appropriate, punitive damages, pursuant to Bankruptcy Code § 362(h).[12]

This court, in a previous decision, has noted:

> The debtor's right to [the] protection of the automatic stay under § 362(a) and [its] right to damages under § 362(h) for a willful violation of the stay are congressionally created rights.... The protection afforded by the automatic stay is the foundation upon which debtor relief is premised under the Bankruptcy Code.

*In re. Tweed,* 76 B.R. 636, 639 (Bankr.E.D. Tenn.1987).

As the legislative history to § 362 makes clear:

> The automatic stay is *one of the fundamental debtor protections provided by the bankruptcy laws.* It gives the debtor a breathing spell from his creditors. It stops all collection efforts, all harassment, and all foreclosure actions. It permits the debtor to attempt a repayment or reorganization plan, or simply to be relieved of the financial pressures that drove him into bankruptcy.

H.R.Rep. No. 95–595, 95th Cong. 1st Sess. 340, *reprinted in,* 1978 U.S.Code Cong. & Ad.News 5787, 5963, 6296–97 (emphasis added).

■ Some courts have construed the term "willful" in § 362(h) to mean "deliberate" or "intentional." *In re Tel–A–Communications Consultants, Inc.,* 50 B.R. 250, 254 (Bankr.D.Conn.1985); *In re Mewes,* 58 B.R. 124, 128 (Bankr.D.S.D. 1986). This court agrees with Bankruptcy Judge Bruce Fox in *In re Wagner,* 74 B.R. 898, 903 (Bankr.E.D.Pa.1987), that "the willfulness requirement refers to the delib-

proceed in the interpleader action." This, however, ignores other pertinent provisions of the court's opinion.

**11.** Noteworthy among the cases relied upon by plaintiffs is *Price & Pierce International, Inc. v. Spicers International Paper Sales, Inc.,* 50 B.R. 25 (S.D.N.Y.1985), a case standing for the propo-

sition that the right to pursue an interpleader action is not affected by the fact that one of the claimants has filed a petition in bankruptcy. The *Pierce* court cites the Sixth Circuit's decision in *NLT* as contrary authority.

**12.** *See* n. 8, *supra.*

erateness of the conduct and the knowledge of the bankruptcy filing, not to a specific intent to violate a court order." Relative to an award of punitive damages under § 362(h), Judge Fox, citing *Cochetti v. Desmond*, 572 F.2d 102 (3rd Cir.1978), a case decided under 42 U.S.C.A. § 1983 (West 1981), notes:

> [P]unitive damages are awarded in response to particularly egregious conduct for both punitive and deterrent purposes. Such awards are "reserved ... for cases in which the defendant's conduct amounts to something more than a bare violation justifying compensatory damages or injunctive relief." To recover punitive damages, the defendant must have acted with actual knowledge that he was violating the federally protected right or with reckless disregard of whether he was doing so.

*In re Wagner*, 54 B.R. at 903–904.

■ Plaintiffs' conduct falls within the ambit of § 362(h). It is undisputed that plaintiffs were aware of the filing of the debtor's bankruptcy petition on April 2, 1987;[13] that they had actual knowledge of the automatic stay; and that they proceeded to file their interpleader action and obtain the temporary restraining order in disregard of the automatic stay. Plaintiffs' actions, notwithstanding their motives, were therefore in "willful" violation of the automatic stay of § 362(a)(1).

■ The court must now determine the amount of damages to which the debtor is entitled. Under the provisions of § 362(h), a finding that the automatic stay was willfully violated mandates an award of actual damages, including costs and attorney's fees, and, in appropriate circumstances, punitive damages.

The circumstances of this case do not warrant the imposition of punitive damages. The court is satisfied that plaintiffs were justified in their concerns as to which entity the January 15, 1987 installment payments should be made. The schedules filed by the debtor in its bankruptcy case evidence the debtor's ownership of plaintiffs' notes; letters from the debtor's attorneys conflict in that plaintiffs were directed to make payment in one instance to Lloyd Bush and in another instance to the debtor; and plaintiffs, despite their requests, were never provided documentation to substantiate payment to Lloyd Bush, the debtor, or Lincoln National.[14] Further, premised upon the January 15, 1988 letter from debtor's attorney, Wynne James, plaintiffs' attorneys had a justifiable fear that the debtor or Lloyd Bush was preparing to institute suit to enforce payment of the January 15, 1987 installment. Further, although this court does not agree with the conclusions reached by plaintiffs' counsel, research was undertaken to determine the applicability of the automatic stay on plaintiffs' ability to file their interpleader action. Plaintiffs' attorneys acted in what they believed to be the best interests of their clients. The court, while disagreeing with the action taken, cannot argue with the legitimate desire of plaintiffs' counsel to protect the interests of their clients.

■ R. Dan Culp, the sole general partner of Culp & Associates, the debtor's managing general partner, testified that the filing of plaintiffs' interpleader action came at a critical time during negotiations with Lincoln National; that he was required to spend a "fair amount" of time on the district court matter, thus diverting his energy from Lincoln National and the formulation of the debtor's plan of reorganization; and that he did not keep time records evidencing the amount of time spent on plaintiffs' matters. Mr. Culp did not testify as to the amount of any actual damages sustained by the debtor as a result of the interpleader action.

---

**13.** Paragraph VI of plaintiffs' "Complaint For Interpleader" states: "Falls Building, Ltd. filed a Chapter 11 petition in the United States Bankruptcy Court for the Eastern District of Tennessee, Northern Division, on April 2, 1987, under case number 3–87–00823."

**14.** While Lincoln National has never asserted any entitlement to payment of the January 15, 1987 installment, the court cannot fault plaintiffs for their concern that Lincoln National might also claim an interest in the notes.

Based on the record before it, the court cannot make a finding on the amount of actual damages, excluding attorney's fees, to which the debtor is entitled. Any award of actual damages would be speculative and based upon conjecture. "A damage award must not be based on 'mere speculation, guess, or conjecture.'" *John E. Green Plumbing & Heating Co. v. Turner Const. Co.,* 742 F.2d 965, 968 (6th Cir.1984), *cert. denied,* 471 U.S. 1102, 105 S.Ct. 2328, 85 L.Ed.2d 845 (1985), *quoting Zirin Laboratories Int'l. v. Mead–Johnson & Co.,* 208 F.Supp. 633 (E.D.Mich.1962). *See also Archer v. Macomb County Bank,* 853 F.2d 497 (6th Cir.1988). The debtor has not established its entitlement to an award of actual damages.

■ In determining the amount of attorney's fees the debtor is entitled to, the court will consider the affidavit of David E. Fielder filed October 14, 1988.[15] Appended to Mr. Fielder's affidavit are invoices evidencing attorney's fees and expenses billed by Heiskell, Donelson through August 17, 1988, totalling $13,922. While additional services were rendered through the date of trial, October 26, 1988, further documentation is not required. No doubt debtor's request for attorney's fees now far exceeds the $13,922 itemized in Mr. Fielder's affidavit. The court is of the opinion, however, that this matter could have and should have been resolved at considerably less expense to the parties than is represented by Mr. Fielder's affidavit.

As evidenced by Patrick Taintor's letter to Mr. Fielder dated December 11, 1987, plaintiffs were seeking clarification of the appropriate entity to whom their January 15, 1987 payments should be made well in advance of the filing of their interpleader action. On March 9, 1988, after the interpleader action was commenced, plaintiffs' attorneys again wrote Mr. Fielder. This letter, written by Pamela McNutt, provides in part:

As I stated before and after the hearing on March 9, 1988, we are amenable to entering into an agreed order stating the proper note-payee to resolve this matter expeditiously. However, this will confirm that you refused to enter into an agreed order as to the proper note-payee.

Michael Luhowiak testified that immediately after filing plaintiffs' amended complaint on February 25, 1988, he told Mr. Fielder that all plaintiffs wanted to do was pay the funds to the proper party and that plaintiffs would agree to transfer the interpleader action to the bankruptcy court. For reasons unexplained, neither the debtor nor its attorneys ever provided plaintiffs with documentation establishing the appropriate recipient of the January 15, 1987 payments. It was only at the April 21, 1988 status conference that the payment issue was resolved.

The court believes the debtor is entitled to reasonable attorney's fees for services rendered by its attorneys through April 21, 1988. Based upon Mr. Fielder's October 14, 1988 affidavit, these attorney's fees are fixed at $5,984. Plaintiffs willfully violated the automatic stay and that violation must be dealt with within the confines of § 362(h). On the other hand, plaintiffs endeavored, before and after filing their interpleader action, to resolve the January 15, 1987 installment payment issue. Fairness dictates that plaintiffs should not be required to absorb all of debtor's attorney's fees associated with this litigation.

A judgment will be entered in the debtor's favor in the amount of $5,984. Each plaintiff will be responsible for one-fifth (⅕th) of the judgment amount.

## VI

After distribution of the $22,000 to Lloyd Bush pursuant to the order of June 2, 1988, there remains on deposit in the Clerk's Registry account the sum of $902.16 plus interest accrued after March 28, 1988.

15. This affidavit was filed in conjunction with a Motion For Summary Judgment filed by the debtor on October 14, 1988. Although the motion was denied, Mr. Fielder's affidavit, a copy of which was served on plaintiffs' counsel, is sufficient to apprise the court of the nature, extent, and value of those services rendered the debtor by its attorneys.

Plaintiffs are the proper parties to receive these funds.

This Memorandum constitutes findings of fact and conclusions of law as required by Bankruptcy Rule 7052. An appropriate judgment will enter.

## JUDGMENT

In accordance with the Memorandum filed this date containing findings of fact and conclusions of law as required by Bankruptcy Rule 7052, it is ORDERED, ADJUDGED and DECREED as follows:

1. That the Counterclaim filed by the Defendant and Counter–Plaintiff, Falls Building, Ltd., relative to its request for interest and attorney's fees on the January 15, 1987 installment payments due on the Negotiable Promissory Notes executed by Plaintiffs and Counter–Defendants shall be and is DISMISSED.

2. That pursuant to 11 U.S.C.A. § 362(h) (West Supp.1988) the Counter–Plaintiff, Falls Building, Ltd., shall have and recover from Counter–Defendants, Arthur Temlock, Thomas Miller, Frank Sisko, J. Phillip Davis and James Baker, the sum of $5,984. Each Counter–Defendant is responsible for one-fifth (⅕th) of this judgment, $1,196.80.

3. That the parties shall be responsible for their own costs.

4. That the Clerk shall remit to Plaintiffs and Counter–Defendants through their attorneys, Patrick, Beard & Richardson, P.C., the balance of funds remaining on deposit in the Registry account from the $22,902.16 deposit made pursuant to the order entered March 28, 1988.