**In re A. Edward McGINTY, Debtor.**

**Bankruptcy No. 90–7062–8P1.**

United States Bankruptcy Court,
M.D. Florida,
Tampa Division.

Sept. 4, 1990.

See also 119 B.R. 289.

Mark J. Wolfson, Tampa, Fla., for debtor.

Raymond C. Farfante, Jr., Tampa, Fla., for Patricia A. McGinty.

Janet Firley, Richard Pippinger, Tampa, Fla., for respondent.

Lynne L. England, Tampa, Fla., for U.S. Trustee.

## ORDER ON MOTION FOR CONTEMPT, SANCTIONS AND/OR DAMAGES

ALEXANDER L. PASKAY, Chief Judge.

IN THIS Chapter 11 case, which no doubt has its genesis in the bitterly fought domestic relation battle between A. Edward McGinty (Debtor), and his former spouse, Patricia A. McGinty (Ms. McGinty), the matter under consideration is a Motion for Contempt, Sanctions and/or Damages filed by the Debtor against Richard G. Pippinger (Mr. Pippinger), the attorney for Ms. McGinty, and Janet Firley (Ms. Firley), a paralegal employed by Mr. Pippinger.

The following relevant facts are without dispute and can be summarized as follows:

On June 26, 1990, the Circuit Court for Hillsborough County, Florida entered a Final Judgment of Dissolution of Marriage and dissolved the marriage of the Debtor and Ms. McGinty. The Final Judgment provided, inter alia, that the Debtor shall pay to Ms. McGinty $300 per month as permanent alimony and $1,400 per month rehabilitative alimony for a period of three years, six months or until six months after Ms. McGinty graduates from law school, whichever occurs first. In addition, the Debtor was required to pay child support. The Final Judgment awarded to Ms. McGinty the IRA funds maintained by the Debtor with the brokerage house of Smith Barney and Merrill–Lynch. These funds total $122,175.00 and $10,022.00, respectively.

On July 6, 1990 the Debtor filed a timely Motion for Retrial and Rehearing with respect to the judgment and attacked the judgment on the basis that it was in violation of Florida law not only concerning the distribution of marital assets but also as to the alimony and attorney fee award provisions of the Final Judgment.

On July 11, 1990 the Circuit Judge entered an Order and set a hearing on the Debtor's Motion for August 23, 1990. However, Ms. McGinty also filed a timely Motion for Rehearing and sought a modification of the Final Judgment. The Voluntary Petition for Relief by the Debtor was

filed on July 19, 1990 and Ms. McGinty was properly scheduled as one of the twenty largest unsecured creditors of the Debtor and was included on the mailing matrix.

On the afternoon of July 19, 1990, the date the Petition was filed, Mr. Pippinger was advised by Ms. Mary L. Taylor (Ms. Taylor), who is also counsel of record for the Debtor in the divorce case, of the commencement of the bankruptcy case. It is without dispute that notwithstanding this information, on July 22, 1990, or three (3) days after the commencement of the case, Mr. Pippinger filed and served an Amended Motion for Rehearing on counsel for the Debtor. In the Motion Mr. Pippinger acknowledged that he was advised of the commencement of the bankruptcy case but, notwithstanding, requested the Circuit Court to determine that the obligation imposed on the Debtor to pay attorneys fees awarded to Mr. Pippinger was in the nature of alimony and spousal support and, therefore, within the exceptive provisions of the general discharge, provided by Section 523(a)(5) of the Bankruptcy Code. The Amended Motion also requested an order requiring payment of child support, permanent alimony, rehabilitative alimony and attorneys fees. It appears that on the same date, Ms. Taylor telecopied to Mr. Pippinger a letter advising him of the affect of the automatic stay imposed by Section 362 of the Bankruptcy Code stating that the filing and serving of the Amended Motion was in violation of the automatic stay (Exhibit E to Motion for Contempt).

On July 25, 1990, Mr. Wolfson called Raymond C. Farfante, Jr., (Mr. Farfante), counsel engaged to represent Ms. McGinty in this Chapter 11 case, who was also advised of the commencement of the Chapter 11 case and was informed that the final judgment entered by the Circuit Court dissolving the marriage was not a final order and any further action by Ms. McGinty in the divorce case would constitute a violation of the automatic stay. It appears that Mr. Farfante advised Mr. Pippinger that if the final judgment was in fact not final because of the pending Motions for Rehearing, no further action should be taken without first obtaining relief from the automatic stay from the Bankruptcy Court. It is without dispute, that on July 25, 1990 Mr. Pippinger delivered a letter to Ms. Taylor informing her that Ms. McGinty intended to withdraw IRA funds, notwithstanding the pendency of the Chapter 11 case. It further appears that on July 25, 1990 Ms. Taylor telecopied a letter to Mr. Pippinger in which she enclosed a copy of the Order and Notice of the Chapter 11 filing, meeting of creditors and again advised Mr. Pippinger that any submission in the divorce case by Mr. Pippinger would be a violation of the automatic stay and that Ms. McGinty must seek relief from the automatic stay in order to proceed any further in the divorce action (Exhibit F to Motion for Contempt).

It appears that on July 25, 1990, notwithstanding the foregoing, Mr. Pippinger filed a Motion in the Circuit Court and sought additional temporary support and requested the Circuit Court to order the Debtor to provide sufficient monies to enable her to attend law school in the Fall of 1990, which should include funds for tuition fees, books and also sought additional attorneys fees and costs for bringing the Motion (Exhibit G to Motion for Contempt). On July 25, 1990 Mr. Pippinger filed, on behalf of Ms. McGinty, a Motion for Contempt (Exhibit H to Motion for Contempt) and sought an order from the Circuit Court to hold the Debtor in contempt for failure to pay permanent alimony, rehabilitative alimony, child support and attorneys fees and costs to her attorney. On July 25, 1990, Mr. Pippinger filed a Notice of Hearing in the Circuit Court on his Motion for Additional Support and the Motion of Ms. McGinty for Contempt. The hearing was set for July 30, 1990.

It appears, and is without dispute, that on July 27, 1990 Ms. McGinty appeared in the office of Smith Barney & Harris and demanded an officer of the brokerage firm to turnover to her the funds held by the Debtor in his IRA account. The officer denied the request. On the same date, the paralegal employed by Mr. Pippinger, Janet Firley, called the office of Smith Barney & Harris and demanded that the funds in the IRA account maintained by the Debtor be

turned over. It is also alleged, although there is no proof in this record, that she stated that she would appear in the office of the brokerage house and remain there until she obtained the funds, even if she had to wait until the year 2006.

Basically these are the underlying facts which appear from the relevant record. Although no evidence was taken by way of testimony, the facts as recited are essentially without dispute. Based on the foregoing, it is the contention of counsel for the Debtor that Mr. Pippinger, Ms. McGinty and Janet Firley willfully and knowingly violated the automatic stay imposed by Section 362 of the Bankruptcy Code and, therefore, it is appropriate not only to find them in contempt of Court but they should be prohibited from any future violations of the automatic stay. In addition, counsel for the Debtor contends that it is entitled to an order declaring void any orders or decrees entered by the Circuit Court in the divorce case after July 19, 1990 and the imposition of sanctions and award of damages in favor of the Debtor against Mr. Pippinger, Ms. McGinty and Ms. Firley, including, but not limited to, attorneys fees and costs.

## POST–PETITION ATTEMPT TO RECOVER IRA FUNDS

The Final Judgment dissolving the marriage made extensive provisions for the distribution of assets by the Debtor and his former spouse and provided, inter alia, in addition to the provisions discussed earlier, that Ms. McGinty was entitled, as equitable distribution of the joint assets, the funds in the IRA account held in Smith Barney & Harris, Account No. 075–533173 maintained in the name of the Debtor valued at $122,175 and the IRA fund held in Merrill Lynch, Account No. 76494041 valued at $10,022.

Paragraph 6 of the Final Judgment further provided (1) the parties shall execute all documents necessary to effectuate the transfer of ownership of real and personal property to the other pursuant to the terms of the Final Judgment; (2) that the judgment distributing assets shall have the effect of a duly executed instrument of conveyance, transfer, release or acquisition, "which is recorded in the county where the property is located", or a certified copy of the judgment recorded in official records citing *Fla. Stat.* 61.075(2). In Paragraph 7, the Final Judgment retained jurisdiction for the purpose of enforcing the terms and provisions of the Final Judgment and for the purpose of determining all issues relating to the reasonableness and necessity of the wife's attorney fees and costs.

Obviously the threshold question is whether or not the funds held in the IRA accounts awarded to the wife by the final judgment were or were not properties of the estate on the date of the commencement of this Chapter 11 case. This is so because if the IRA funds were no longer properties of the estate, any attempt to recover the funds would not have been a violation of the automatic stay.

The term "property of the estate" is dealt with in Section 541 of the Bankruptcy Code which provides in paragraph one of subsection (a) that the estate is comprised of all legal or equitable estates of the debtor in property wherever located as of the commencement of the case. There is no doubt that Congress intended by eliminating the vesting of title concept provided by Section 70(a) of the Act of 1898 to give the broadest possible reach of § 541 and intended to include all kinds and all forms of property in which the Debtor has any cognizable legal or equitable interest whatsoever. However, what is or is not property of the estate is determined with reference to state law. *In re Farmers Markets, Inc.*, 792 F.2d 1400 (9th Cir.1986); *In re Telemart Enterprises, Inc.*, 524 F.2d 761, 765 (9th Cir.1975), cert. denied, 424 U.S. 969, 96 S.Ct. 1466, 47 L.Ed.2d 736 (1976); *In re Contractors Equipment Supply Co.*, 861 F.2d 241 (9th Cir.1988). Thus, notwithstanding the broad scope of Section 541, there is hardly any doubt that if under local applicable law the final judgment entered prior to the commencement of the Chapter 11 case did effectively vest ownership of the two IRA funds in Ms. McGinty, the funds were no longer property of the estate thus no longer protected by

Section 362(a)(2) or (3) of the Bankruptcy Code.

■ The difficulty in this case, which appears to be a matter of first impressions, stems from the fact that there was a timely Motion for Rehearing filed by counsel for the Debtor which, as urged by counsel for the Debtor, did suspend the finality of the judgment until the Motion was ruled upon and therefore on the date of the commencement of the case, the funds in the IRA accounts were still property of the estate.

The Final Judgment on its face purports to create finality, especially in light of the uncontradicted fact that a certified copy of the Final Judgment was placed on the public record on the date the Judgment was entered. Thus, the IRA funds were no longer property of the estate on the date of the commencement of this Chapter 11 case unless one accepts the argument of counsel for the Debtor that a timely filed motion for rehearing suspended the finality of the judgment and did not transfer the ownership in the two IRA funds from the Debtor to Ms. McGinty.

The legal effect of a final judgment entered in a dissolution of marriage proceeding is specifically dealt with in *Fla. Stat.* 61.075(2) which provides that:

The judgment distributing assets shall have the effect of a duly executed instrument of conveyance, transfer, release, or acquisition which is recorded in the county where the property is located when the judgment or a certified copy of the judgment is recorded in the official records of the county in which the property is located.

Florida Rules of Civil Procedure 1.530 deals with the procedure for motions for new trials and rehearings and amendments of judgments. This Rule, in subclause (b), provides that motions for retrial or for rehearing should be served not later than ten days after the date of filing the judgment in a non-jury action. However, this Rule, unlike the corresponding Federal rule, Fed.R.Civ.P. 62, does not provide for an automatic stay of ten (10) days from the date of entry of the judgment, and it is silent what impact a motion filed under this Rule has on the finality of the judgment, if any.

Rule 1.550 entitled, "Executions and Final Process", provides in Subclause (a) that

no execution or other final process shall issue until the judgment on which it is based has been recorded nor within the time for serving a motion for new trial or rehearing and if a motion for new trial or rehearing is timely served, until it is determined....

The courts of this State had numerous occasions to consider the legal impact of a timely motion for new trial for the purpose of appeal. Thus, in the case of *Slatcoff v. Dezen*, 72 So.2d 800, 801 (Fla.1954), the Supreme Court held that whether or not a judgment is final or not is determined whether the judicial labor of the trial court came to an end. Based on this the Court held that the judgment did not become final until the expiration of the ten days provided for by the Rule governing motions for rehearing. The case of *Cocalis v. Cocalis*, 103 So.2d 230, is also illustrative of this point. This case involved the effect of a timely filed motion for rehearing of the right to appeal. This Court has no difficulty to accept the proposition that the time to file a notice of appeal did not commence to run until the trial court ruled on a timely filed motion for rehearing, citing *Rice v. Doyle*, 232 So.2d 163 (Fla.1970); *Ganzer v. Ganzer*, Fla.1956, 84 So.2d 591; *McArthur v. McArthur*, Fla.1957, 95 So.2d 521.

The closest authority which shed light on this problem is the case of *Pruitt v. Brock*, 437 So.2d 768 (Fla. 1st DCA 1983). In this case there was a timely motion filed for rehearing under Florida Rules of Civil Procedure 1.530(b) and a motion for relief from the final judgment under Rule 1.540(b). This Rule authorizes a litigant to seek relief from a final judgment on the grounds of mistake, inadvertence, surprise, excusable neglect or fraud. The motion under this Rule must be filed within one year after the entry of the judgment, decree, or the order of proceeding was entered or taken. In *Pruitt*, it was without dispute that the motion under Rule 1.540 was not filed within one year from the entry of the

judgment, but it was filed within one year from the entry of the order which denied the motion for rehearing. The First District Court of Appeal held

> If a timely motion for rehearing is to affect the finality and the operation of a final judgment, order or decree for appellate purposes, we can find no logical reason for not consistently applying that principle to toll the one-year time limitation provided in Rule 1.540(b), until such time as the motion's disposition. A timely motion for rehearing, in our view, has the same purposes for either appellate, or relief from judgment purposes: It delays the termination of judicial labor at the trial level.

437 So.2d at 772.

The First District Court of Appeals based on *Slatcoff* also held that

> The traditional test usually employed by the courts of this state in determining the finality of an order, judgment, or decree is whether the order in question marks the end of the judicial labor in the case, and *nothing further remains to be done by the court to fully effectuate a termination of the cause as between the parties directly affected.* (emphasis supplied)
>
> *Hotel Roosevelt Company v. City of Jacksonville,* 192 So.2d 334, 338 (Fla. 1st DCA 1966). Accord *Chan v. Brunswick Corp.,* 388 So.2d 274, 275 (Fla. 4th DCA 1980) (Order final when all judicial labor *required* or *permitted* is complete.)
>
> The end of all required or permitted judicial labor at the trial level is obviously not reached until that court loses jurisdiction over the matter through expiration of the ten-day time period in which a motion for rehearing is required to be served or, if such motion is timely served, upon disposition thereof.

*Pruitt* was cited with approval later on. In the case of *Joannou v. Corsini,* 543 So.2d 308 (Fla. 4th DCA 1989), the Fourth District stated:

> In Florida a judgment is final "[w]here nothing further remains to be done to fully effectuate termination of the cause between the parties directly affected except enforcement by execution or otherwise." *Chan v. Brunswick Corp.,* 388 So.2d 274, 275 (Fla. 4th DCA 1980). Accord *Pruitt v. Brock,* 437 So.2d 768 (Fla. 1st DCA 1983). That termination occurs when the trial court loses jurisdiction over the cause upon the expiration of the time limit set forth in Florida Rule of Civil Procedure 1.530(b). *Pruitt* at 774. An appeal does not affect finality, but a party may stay enforcement of a judgment by posting a supersedeas bond in the case of a money judgment.

543 So.2d at 310.

One must concede that Fla. Stat. 61.075, viewed in isolation, purports to operate as a self-executing decree and in Paragraph 2 purports to vest ownership without any further action by the court or by the party to whom the property was awarded in order to obtain a transfer of ownership and the judgment itself is sufficient to effect the transfer of ownership when a certified copy of the judgment is recorded. However, this Statute should not be viewed in a vacuum. This Court is satisfied that reading the Statute in conjunction with the Rules noted permits no other sensible conclusion, except that a timely motion filed for rehearing suspends the validity of the Final Judgment since "the judicial labor on the trial level" did not come to an end. *See Slatcoff, supra.* Accordingly, the passage of title and ownership to the IRA funds did not occur because of the pendency of the timely filed Motion for Rehearing thus these funds still remained the properties of the Debtor and in turn the property of the estate. This being the case, the funds were within the protection of the automatic stay and any attempt by the former spouse of the Debtor, Ms. McGinty, and also by the paralegal employed by her counsel, to obtain possession or to exercise control over the funds in the two IRA accounts was clearly a violation of the automatic stay by virtue of § 362(a)(3).

This leaves for consideration whether or not Mr. Pippinger, counsel for Ms. McGinty, did also violate the automatic stay when well knowing and being aware of the pendency of the Chapter 11 case

filed two Motions in the Circuit Court after the commencement of the case, one to seek additional temporary support on behalf of Ms. McGinty and another seeking a determination by the divorce court that the attorney fee award was in fact in the nature of alimony and support and, therefore, within the exceptive provisions of Section 523(a)(5) of the Bankruptcy Code.

■ There is hardly any doubt that any action to impose a personal liability or to collect a pre-petition claim against a Debtor is prohibited by the automatic stay and those who knowingly and willfully violate the automatic stay may be liable for sanctions imposed pursuant to Section 362(h) of the Bankruptcy Code. In the case of *Amonte v. Amonte*, 17 Mass.App. 621, 461 N.E.2d 826 (1984), the Court of Appeals held that the wife, notwithstanding of her awareness of the pendency of the husband's bankruptcy, proceeded with a hearing post-petition and obtained a final judgment by default against the husband. On appeal, Justice Greaney, speaking for the Court, held that the automatic stay imposed by the Bankruptcy Code applies without regard to whether the underlying debt is or is not dischargeable and any proceeding in violation of the automatic stay is void. The Court also noted that the exception to the automatic stay provided for by § 362(b)(2) is limited to actions to collect alimony, maintenance and support other than from properties of the estate. In the case of *In re Stringer*, 847 F.2d 549 (9th Cir.1988), the Court concluded that an action sought by a spouse for modification of child support provisions of a divorce decree was not within the exceptions to the automatic stay because same cannot be considered to be collection of child support. *See also In re Dexter*, 116 B.R. 92, 20 B.C.D. 1156 (Bankr.S.D.Ohio 1990).

Based on these authorities, there is hardly any doubt that the Motions filed post-Petition by Mr. Pippinger clearly violated the automatic stay.

■ As noted at the outset, the Motion filed by counsel for the Debtor seeks a citation for contempt, imposition of sanctions and damages. This record does not warrant a contempt finding against either counsel for Ms. McGinty, Mr. Pippinger, his paralegal, Ms. Firley, or Ms. McGinty for the simple reason that before one could be found in civil contempt there must be a written order which has been knowingly and willfully violated by the alleged contemnor.

It cannot be gainsaid that before one is found in criminal contempt there must be a valid, lawful order entered by a court of competent jurisdiction which is willfully disobeyed. *U.S. v. Burstyn*, 878 F.2d 1322, 1324 (11th Cir.1989). There is no valid reason there should be a distinction between civil and criminal contempt and, therefore, before one could be found in civil contempt there must also be established a willful disobedience of a lawful order. *Russell v. Sullivan*, 887 F.2d 170, 171 (8th Cir.1989).

This record is devoid of any evidence that these parties violated any order entered by this Court. This conclusion, however, still leaves open the question of whether or not it is appropriate to impose sanctions against some or all of them for their willful violation of the automatic stay pursuant to Section 362(h) of the Bankruptcy Code which expressly provides that:

> an individual injured by any willful violation of a stay provided by this section shall recover actual damages, including costs and attorneys' fees, and, in appropriate circumstances, may recover punitive damages.

Having concluded that Mr. Pippinger, his paralegal, Ms. Firley, and Ms. McGinty violated the automatic stay, it is appropriate to consider the request by the Debtor for imposition of sanctions pursuant to this Section of the Code but in light of the fact that there was no evidence presented to what sanctions, if any, shall be imposed by this Court, it is appropriate to schedule a final evidentiary hearing to enable the Debtor to establish what damages, if any, he has suffered as a result of the violation of the automatic stay by Mr. Pippinger, Ms. Firley and Ms. McGinty.

Accordingly, it is

ORDERED, ADJUDGED AND DE-CREED that the Motion for Contempt filed by the Debtor, treated as a Motion to Impose Sanctions be, and the same is hereby, granted, and Mr. Pippinger, Ms. McGinty and Ms. Firley be, and the same are hereby, found to have knowingly violated the automatic stay. It is further

ORDERED, ADJUDGED AND DE-CREED that a final evidentiary hearing to establish what damages, if any, the Debtor has suffered as a result of the violation be, and the same is hereby, scheduled before the undersigned for the 21st day of September, 1990 at 9:00 a.m. It is further

ORDERED, ADJUDGED AND DE-CREED that to the extent the Motion seeks injunctive relief, the same is denied as procedurally improper in that such proceeding requires an adversary proceeding. However, this provision of the Order shall not be construed to be an approval of counsel's conduct and he shall not, without violating the automatic stay, seek any further action on his two Motions or any other motions he may file in the Circuit Court without obtaining relief from this Court.

DONE AND ORDERED.