In re William Brady TIMBS a/k/a Bill Timbs, Rebecca Lynn Timbs a/k/a Rebecca Lynn Gross, Debtors.

Bankruptcy No. 93–35222.

United States Bankruptcy Court, E.D. Tennessee.

June 22, 1994.

Michael J. O'Conner, Johnson City, TN, for debtors.

David A. Lufkin, P.C., David A. Lufkin, Lufkin & Henley, of counsel, Knoxville, TN, for respondent.

## *MEMORANDUM*

MARCIA PHILLIPS PARSONS, Bankruptcy Judge.

This case came before the court for hearing on May 17, 1994, upon the debtors' motion filed April 20, 1994, requesting an order finding that attorney David Lufkin "has willfully violated the automatic stay of 11 U.S.C. § 362(a), thereby committing civil contempt." This is a core proceeding. 28 U.S.C. § 157(b)(1) and (b)(2)(*O*). *See In re Depew,* 51 B.R. 1010, 1014 (Bankr.E.D.Tenn.1985).

### I.

The facts of this case are not in dispute. The debtors filed for relief under Chapter 7 of the Bankruptcy Code on December 30, 1993, and thereupon, the automatic stay provided by 11 U.S.C. § 362(a) went into effect. Prior to the bankruptcy filing on October 11, 1993, Northside Hospital ("Northside"), represented by David A. Lufkin, P.C., obtained a default judgment against the debtors in the amount of $15,177.75. Thereafter, David A. Lufkin, P.C., applied to the Carter County clerk and master for a writ of execution, and commencing on or about December 13, 1993, debtor Rebecca Timbs' wages were garnished in the bi-weekly amount of $164.40 in execution of the judgment.

Northside and attorney David A. Lufkin were listed on the mailing matrix and on Schedule F, *Creditors Holding Unsecured Non–Priority Claims,* filed by the debtors along with their bankruptcy petition. On January 5, 1994, the clerk of the court noti-

fied all creditors and parties in interest, including Mr. Lufkin and Northside, of the debtors' bankruptcy filing. Mr. Lufkin received notice of the bankruptcy filing and advised the collection company, by whom he was employed to collect this debt, of the debtors' pending bankruptcy by letter dated January 19, 1994.

Despite notice of the bankruptcy filing to Northside and Mr. Lufkin, the garnishment of Rebecca Timbs' wages continued postpetition with Mrs. Timbs' wages being garnished on or about January 5, January 19, February 2 and February 16, 1994. When Mr. Lufkin refused to take any action to stop the garnishment despite several telephone calls to his office by debtors' attorney requesting that steps be taken to stop the garnishment, debtors filed a motion on March 3, 1994, requesting a finding that Northside had willfully violated the automatic stay by failing to stop the garnishment. Mr. Lufkin on behalf of Northside filed a response in which he conceded that the facts as represented in the motion were accurate, but requested that the court summarily rule on the motion without a hearing. Mr. Lufkin asserted in the response that neither he nor Northside was "required to take any affirmative act" such as tendering an order or release to the state court to stop the garnishment process after receiving notice of the bankruptcy.

In a memorandum opinion entered March 21, 1994, the court ruled that Northside had willfully violated the automatic stay by failing to take any action to stop the continuing postpetition garnishment proceeding against Mrs. Timbs despite having notice of the bankruptcy and the repeated demands of debtors' counsel. The court then set a hearing for April 26, 1994, in order to fix damages and determine appropriate relief. However, prior to the hearing on damages, on April 20, 1994, debtors filed the present motion requesting that Northside's attorney, David Lufkin, be found to have willfully violated the automatic stay because of his inaction with respect to the garnishment. In this motion, the debtors addressed not only the four garnishment episodes which were the subject of the court's previous ruling, but additionally alleged that debtor Rebecca Timbs' wages

had since been garnished on four more occasions, March 2, March 16, March 30 and April 13. The court set that motion for an expedited hearing, to coincide with the hearing on the determination of damages on debtors' first motion, for the sole purpose of addressing the continuation of the garnishment.

At the April 26, 1994 hearing, Mr. Lufkin, on behalf of Northside, continued to argue that Northside was not in violation of the automatic stay because it did not "do anything" with respect to the garnishment after the filing of the bankruptcy case, and that it had no obligation to take any steps to stop the garnishment, asserting that this was the responsibility of the debtors and their attorney. After hearing proof on the damages sustained by the debtors as a result of the garnishments, the court awarded the debtors a judgment against Northside in the amount of $797.36 in compensatory damages plus $835.00 in attorney fees and $2,000.00 in punitive damages. The court found that Northside's failure to halt the garnishment despite the request of debtors' counsel that it be stopped was particularly egregious, noting *inter alia*, Mr. Lufkin's failure to engage in any legal research on the issue, but instead choosing to rely upon his "15 years of experience." This court observed that even minimal research would have revealed that the courts have widely held that a creditor has an affirmative duty to dismiss a garnishment upon learning of the bankruptcy. *See* May 4, 1994 memorandum opinion citing *Ledford v. Tiedge (Matter of Sams)*, 106 B.R. 485 (Bankr.S.D. Ohio 1989); *In re Dungey*, 99 B.R. 814 (Bankr.S.D. Ohio 1989); *Mitchell v. Quality Plant Service, Inc. (In re Mitchell)*, 66 B.R. 73 (Bankr.S.D. Ohio 1986); *Summerlin v. Outlaw (In re Outlaw)*, 66 B.R. 413 (Bankr.E.D.N.C.1986); *O'Connor v. Methodist Hospital of Jonesboro, Inc. (In re O'Connor)*, 42 B.R. 390 (Bankr.E.D.Ark.1984); *Dennis v. Pentagon Fed. Credit Union (Matter of Dennis)*, 17 B.R. 558 (Bankr.M.D.Ga. 1982); *Elder v. City of Thomasville, Georgia (In re Elder)*, 12 B.R. 491 (Bankr.M.D.Ga. 1981). The court warned Northside that any future garnishments of Mrs. Timbs' wages would result in additional punitive damages being imposed. The court directed that a

hearing on the motion against Mr. Lufkin individually would be held on May 17, 1994, and stated that the court would consider additional relief against Northside if the garnishment continued. Subsequently, Mr. Lufkin tendered to the state court chancellor an order terminating the garnishment, which order was entered by the chancellor on May 5, 1994, but not before Mrs. Timbs' wages were again garnished on April 27, 1994, and on May 11, 1994.[1]

At the May 17, 1994 hearing, attorney Nelwyn Rhodes appeared and advised the court that she had been retained to represent Northside, that Mr. Lufkin's representation on behalf of Northside had been terminated and that Northside would take steps to immediately insure that all garnished funds were remitted to the debtors. In a report filed by Northside on May 23, 1994, Ms. Rhodes represented on behalf of Northside that a check in the amount of $1,644.00, the total amounts garnished from Mrs. Timbs' wages, had been delivered to the debtors' attorney.

The issue before this court is whether Mr. Lufkin, individually, should be found to have willfully violated the automatic stay because of his failure to stop the garnishment resulting in Mrs. Timbs' wages being garnished postpetition. The debtors contend that Mr. Lufkin individually had a duty to stop the garnishment once he received notice of the debtors' bankruptcy because as Northside's attorney, he had initiated the garnishment proceedings. The debtors maintain that Mr. Lufkin's failure to act was a willful violation of the automatic stay, subjecting him to liability for damages including punitive damages, and assert that his continued failure to act after the court entered its March 21, 1994 order was a "willful, flagrant and brazen disregard of both the order of this court and 11 U.S.C. § 362(a)(1)."

In his response filed May 5, 1994, and at the hearing on the motion on May 17, 1994,

Mr. Lufkin continued to deny that a creditor and its attorney have any affirmative duty postpetition to stop a garnishment which was initiated prepetition. In addition, Mr. Lufkin has raised various legal arguments as to why judgment against him individually is not appropriate. For the reasons set forth below, the court concludes that Mr. Lufkin's legal defenses are without merit.

## II.

Initially, Mr. Lufkin contends that he individually is not before the court, because "he individually and personally has never made an appearance in this matter, even as an attorney practicing before this court." He maintains that he practices law as David A. Lufkin, P.C., a professional corporation, and that Northside has been represented in this matter by the corporation.

Rule 9011 of the Federal Rules of Bankruptcy Procedure requires that every "paper served or filed in a case under the Code on behalf of a party represented by an attorney ... shall be signed by at least one attorney of record in the attorney's *individual* name...." (emphasis supplied). Mr. Lufkin has filed the following papers in this case: the response on behalf of Northside Hospital on March 1, 1994; the notice of filing of affidavit filed on March 14, 1994[2]; a motion for leave to appeal together with a notice of appeal filed on March 31, 1994; the motion to set aside and response to debtors' second motion filed on May 5, 1994; the second notice of appeal filed on May 11, 1994; and the motion for stay pending appeal filed May 11, 1994. Some of these papers were signed by Mr. Lufkin both as "David A. Lufkin, P.C." and as "David A. Lufkin, individually for purposes of TRCP 11 [sic] only;" the balance were signed by Mr. Lufkin solely as "David A. Lufkin, P.C." Because the only signature of an attorney on these particular

---

1. Although the testimony was not clear, it appears that Mrs. Timbs' employer did not receive notice of the order terminating the garnishment in time to prevent it from deducting the garnishment amount from Mrs. Timbs' wages on May 11, 1994.

2. While not determinative, the court notes that both the March 1, 1994 response and the March 14, 1994 notice of filing of affidavit begin "[c]omes David A. Lufkin, Attorney for Northside Hospital...."

papers[3] is that of Mr. Lufkin, and the papers were submitted by him to the clerk for filing, the court deems those documents to have been signed by Mr. Lufkin individually as required by FED.R.BANKR.P. 9011.

■ Furthermore, the Tennessee Professional Corporation Act (the "Act"), under which the entity of David A. Lufkin, P.C., is incorporated, provides that a professional corporation renders professional services[4] only through licensed individuals. *See* TENN. CODE ANN. § 48–3–607 (1993). The Act further provides that "[e]ach individual who renders professional services as an employee of a domestic or foreign professional corporation is liable for such individual's own negligent or wrongful acts or omissions to the same extent as if that individual rendered the services as a sole practitioner." *See* TENN. CODE ANN. § 48–3–621(a) (1993). Accordingly, it matters not whether Mr. Lufkin practices law as an individual or only through the entity of David A. Lufkin, P.C. If Mr. Lufkin, either individually or acting through his corporation, is found to have willfully violated the automatic stay, he is liable to the same extent as if he violated the automatic stay as a sole practitioner. The existence of his professional corporation can not serve to insulate Mr. Lufkin personally from his own actions and inactions in this matter.

Additionally, Mr. Lufkin asserts that neither he personally nor David A. Lufkin, P.C., has been served with any process. This same issue was raised by Mr. Lufkin on behalf of Northside in a motion to set aside the court's March 21, 1994 order. As ruled in the memorandum and order entered on May 5, 1994, denying that motion, the court finds that the record conclusively establishes the contrary. A certificate of service attached to the debtors' motion of April 20, 1994, evidences that on April 20, 1994, copies of the motion were appropriately served by first class mail upon David A. Lufkin, Attorney at Law, in accordance with FED. R.BANKR.P. 9014 and 7004(b)(1).

■ In fact, Mr. Lufkin does not deny that he was served with a copy of the motion. Instead, he asserts that this matter could have only been commenced by the filing of a complaint and that since no complaint has been filed, the court lacks personal jurisdiction over him. Mr. Lufkin maintains that this is a proceeding to recover money or property[5] which under Rule 7001[6] of the Federal Rules of Bankruptcy Procedure must be commenced by the filing of a complaint rather than a motion. *See* FED. R.BANKR.P. 7003 incorporating FED.R.CIV.P. 3.

The first sentence of the present motion recites that debtors seek "an order finding that David A [sic] Lufkin has willfully violated the automatic stay of 11 U.S.C. § 362(a)...." In their prayer for relief, debtors request that the court impose sanctions for the violation, including the reimbursement of funds garnished and other compensatory and punitive damages. 11 U.S.C. § 362(h) provides that an individual injured by any willful violation of the § 362 stay shall recover actual damages and in appropriate circumstances, punitive damages. This subsection, which is the remedy provi-

---

**3.** The writ of execution and the transmittal letter transmitting the writ to the Clerk and Master of Carter County Chancery Court were signed by Thomas R. Henley, on behalf of David A. Lufkin, P.C. However, there is no evidence that Mr. Henley took any further action in this matter and it is undisputed that Mr. Lufkin was the attorney notified of the bankruptcy, he was the attorney to whom debtors' attorney directed his request that the garnishment be stopped, and he was the attorney who refused to stop the garnishment.

**4.** "Professional service" is defined under the Act as "a service that may be lawfully rendered only by a person licensed or otherwise authorized by a licensing authority in this state to render the service, and that may not be lawfully rendered by

a corporation under the Tennessee Business Corporation Act." TENN.CODE ANN. § 48–3–603(7) (1993).

**5.** Mr. Lufkin asserted at the May 17 hearing that the wages garnished postpetition were property of the estate and that therefore, this was an action to recover property of the estate. However, it is clear under 11 U.S.C. § 541(a)(6) that postpetition earned income of a chapter 7 debtor is not property of the estate. *See In re Passmore,* 156 B.R. 595, 598 (Bankr.E.D.Wis.1993).

**6.** "An adversary proceeding is governed by the rules of this Part VII. It is a proceeding (1) to recover money or property...." FED.R.BANKR.P. 7001(1).

sion for a violation of the stay, was added to the Bankruptcy Code as a part of the Bankruptcy Amendments and Federal Judgeship Act of 1984.[7] Neither the legislative history to the enactment nor the Code itself gives any guidance as to whether actions under § 362(h) must be brought as adversary proceedings which are initiated by the filing of a complaint, *see* Fed.R.Bankr.P. 7003, or as contested matters wherein relief is sought by motion. *See* Fed.R.Bankr.P. 9014.

The courts that have expressly considered the issue have unanimously concluded that these actions may be brought by motion rather than by complaint. *See In re Price,* 134 B.R. 313, 315–16 (Bankr.N.D.Ill.1991); *In re Hooker Investments, Inc.,* 116 B.R. 375, 378 (Bankr.S.D.N.Y.1990); *In re Forty–Five Fifty–Five, Inc.,* 111 B.R. 920, 922 (Bankr. D.Mont.1990); *In re Karsh Travel, Inc.,* 102 B.R. 778, 780–81 (N.D.Cal.1989), *appeal dismissed, vacated in part as moot, Karsh Travel, Inc. v. Airlines Reporting Corp.,* 942 F.2d 792 (9th Cir.1991); *In re Zumbrun,* 88 B.R. 250, 252 (9th Cir. BAP 1988). *See also* David G. Epstein, Steve H. Nickles & James J. White, Bankruptcy § 3–33 (1992) (damages pursuant to § 362(h) are pursued as a disputed matter).

In addition, numerous other courts have implicitly recognized that sanctions under § 362(h) may be imposed by means of a motion. *See, e.g., Budget Service Co. v. Better Homes of Virginia, Inc.,* 804 F.2d 289 (4th Cir.1986); *In re Dencklau,* 158 B.R. 796 (Bankr.N.D. Iowa 1993); *In re McGinty,* 119 B.R. 290 (Bankr.M.D.Fla.1990); *In re Dungey,* 99 B.R. at 815; *Matter of Mullarkey,* 81 B.R. 280 (Bankr.D.N.J.1987); *In re Depew,* 51 B.R. at 1014.

Although the damages sought by the debtors include the recovery of money or property in the form of garnished wages, all actions to recover damages for willful violations of the automatic stay could technically be construed as "proceedings to recover money or property" and thus, under Fed.R.Bankr.P. 7001(1), would be required to be brought as an adversary proceeding. However, this court is unpersuaded that Fed.R.Bankr.P. 7001(1) should be read so broadly and is not convinced that the numerous courts which have ruled that such matters may be brought by motion are incorrect.

■ Moreover, even where there is merit to the argument that a certain matter must be brought within the context of an adversary proceeding rather than as a contested matter, courts have allowed the matter to proceed on the merits as originally filed where the rights of the affected parties have been adequately protected so that no prejudice has arisen, refusing to elevate form over substance. *See In re Zumbrun,* 88 B.R. at 252 ("the same due process requirements are applicable to both Bankruptcy Rules 7004 and 9014"). *See also In re Forty–Five Fifty–Five, Inc.,* 111 B.R. at 922–23; *In re Command Services Corp.,* 102 B.R. 905, 908 (Bankr.N.D.N.Y.1989).

Although this court concludes that this matter was appropriately brought as a motion and that it was not necessary for the debtors to file a complaint initiating an adversary proceeding, there is no evidence that Mr. Lufkin suffered any prejudice arising out of the type of proceeding held because he was fully presented with the opportunity to defend himself on the merits of this matter. Mr. Lufkin does not deny that he was served with the motion by first class mail, the same method by which a complaint and summons may be served.[8] Mr. Lufkin was given the opportunity by the court to file a response to the motion and an evidentiary hearing on the motion was held wherein Mr. Lufkin was given the opportunity to present witnesses on his behalf. Mr. Lufkin did assert at the hearing that he had not had an opportunity to depose the debtors' witnesses because this matter was brought by motion rather than by complaint, suggesting that discovery procedures are not available to parties within the context of a contested matter and are reserved exclusively for litigation in an adversary proceeding. While Fed.R.Bankr.P.

---

7. Pub.L. No. 98–353 (1984).

8. Fed.R.Bankr.P. 9014 requires that "[t]he motion shall be served in the manner provided for service of a summons and complaint by Rule 7004 . . . ."

9014 does provide a more expedited framework for concluding disputed matters, portions of Part VII of the Bankruptcy Rules, including the rules providing for discovery, are explicitly applicable to contested matters and the balance of the Part VII rules are utilizable at the court's discretion. *See* FED. R.BANKR.P. 9014; *In re Command Services,* 102 B.R. at 909. Thus, the fact that this matter was brought as a contested matter rather than an adversary proceeding did not deny Mr. Lufkin due process.

■ Mr. Lufkin next asserts that he "knows of no law that would support a personal action against him by motion for his representation or lack thereof, [sic] for his own client in a bankruptcy case." Contrary to Mr. Lufkin's assertion, there are numerous instances in which attorneys have been found to have violated the automatic stay as a result of their actions or omissions on behalf of their client and have been sanctioned accordingly. *See Stainton v. Lee (In re Stainton),* 139 B.R. 232, 234 (9th Cir. BAP 1992) (counsel and creditor/client sanctioned for violating stay by proceeding with detainer action in state court after bankruptcy filing); *Zick v. Zick (In re Zick),* 123 B.R. 825, 826 (Bankr.E.D.Wis.1990) (attorney and client sanctioned for postpetition filing of modification of property division in state court in violation of stay); *In re McGinty,* 119 B.R. at 296 (attorney violated stay by seeking additional spousal support for client after receiving notice of bankruptcy); *In re Hooker Investments, Inc.,* 116 B.R. at 383 (attorney but not client sanctioned for substituting party plaintiff in state court proceeding in violation of the stay); *Matter of Sams,* 106 B.R. at 490 (attorney and creditor/client sanctioned for violating stay by not taking any action to stop sheriff's postpetition foreclosure sale which they had put into motion prepetition); *In re Zumbrun,* 88 B.R. at 251 (attorney sanctioned for postpetition filing of state court lawsuit on behalf of client in violation of stay); *Dubin v. Jakobowski (In re Stephen W. Grosse, P.C.),* 84 B.R. 377, 384 (Bankr. E.D.Pa.1988), *aff'd,* 96 B.R. 29 (E.D.Pa.1989), *aff'd,* 879 F.2d 856 (3rd Cir.1989), *cert. denied,* 493 U.S. 976, 110 S.Ct. 501, 107 L.Ed.2d 504 (1989) (attorney's failure to dissolve writ of execution after court found

client/creditor in contempt for failure to do so upon bankruptcy filing justified additional sanctions against attorney); *Matter of Mullarkey,* 81 B.R. at 284–85 (attorneys but not creditor/client sanctioned for directing sheriff to proceed with foreclosure sale in violation of stay); *In re Crabtree,* 60 B.R. 147, 150 (Bankr.E.D.Tenn.1986) (law firm, its named partner and local counsel sanctioned for violating automatic stay by obtaining restraining order); *In re Demp,* 23 B.R. 239, 240 (Bankr.E.D.Pa.1982) (creditor/client and counsel sanctioned for violating automatic stay by having debtor's property posted for sheriff's sale); *Bailey v. Bailey (Matter of Bailey),* 20 B.R. 906, 913 (Bankr.W.D.Wis. 1982) (attorney but not creditor/client sanctioned for securing lien on debtor's homestead in violation of stay). *See also* J. Scott Humphrey, Comment, *Sanctions Against the Creditor's Attorney in Non–Reorganization Bankruptcy Proceedings,* 6 BANKR.DEV.J. 481 (Fall 1989); EPSTEIN, *supra,* ("Damages are recoverable under § 362(h) from any entity responsible for the violation.... Significantly, the people accountable include not only the person whose actions violated the stay, but also people who counselled or aided the actions, including the actor's lawyer."). These cases and additional authorities unquestionably establish that attorneys are not immune from being found to have violated the automatic stay of § 362 simply because their actions were taken by them in their representative capacity as attorney for a client. Accordingly, this argument is likewise without merit.

### III.

■ The court having found that Mr. Lufkin's legal defenses are insufficient to bar debtors' motion, the court will proceed with consideration of the merits of the motion. With respect to the first four episodes of the postpetition garnishment which were the subject of the debtors' first motion against Northside, the court has already ruled that Northside's failure to stop the garnishment once it received notice of debtors' bankruptcy filing was a violation of the automatic stay. Although Mr. Lufkin was privy to the first motion as the attorney of record for North-

side and it was upon his advice that Northside relied in refusing to stop the garnishment, the debtors did not request in their first motion that Mr. Lufkin be sanctioned for his own personal failure with respect to the first four garnishment episodes, and the court having already ruled thereupon, declines to revisit that particular issue. In short, the court finds that the debtors are now collaterally estopped from raising the identical issue as was before the court on their first motion. *See Spilman v. Harley,* 656 F.2d 224, 228 (6th Cir.1981) (if the precise issue raised in later proceeding was litigated in a former proceeding by the parties or their privies, collateral estoppel bars the relitigation of the issue); *Sanders Confectionery Products, Inc. v. Heller Financial, Inc.,* 973 F.2d 474, 481 (6th Cir.1992), *cert. denied,* —— U.S. ——, 113 S.Ct. 1046, 122 L.Ed.2d 355 (1993), *rehearing denied,* —— U.S. ——, 113 S.Ct. 1628, 123 L.Ed.2d 186 (1993) (for claim and issue preclusion, privity means a successor in interest to the party, one who controlled the earlier action, or one whose interests were adequately represented).

 With respect to the remaining garnishment episodes, however, this court concludes that Mr. Lufkin, individually, violated the automatic stay when he failed to stop the postpetition garnishment of Mrs. Timbs' wages. As noted earlier, the courts have widely held that a creditor has an affirmative duty to halt all collection efforts, including garnishments which were set into motion prepetition, once the creditor receives notice of the bankruptcy filing. As stated by one court:

> Part of what is stayed in 11 U.S.C. § 362 is "continuation." [9] Garnishment involves a creditor, a garnishee, and a court. Creditor sets in motion the process. Creditor is in the driver's seat and very much controls what is done thereafter if it chooses. If the "continuation" is to be stayed, it cannot choose to do nothing and pass the buck to the garnishee or the court in which the garnishment is filed to effectuate the stay.

> Positive action on the part of the creditor is necessary so that "continuation" may be stayed.

*In re Elder,* 12 B.R. at 494.

This duty has been extended to the creditor's attorney. In a case on point, with facts almost identical to those before this court, the bankruptcy court in *In re Dennis* held that when a creditor's attorney is notified of the institution of a bankruptcy proceeding, he has an affirmative duty to dismiss the garnishment. As stated by the court:

> Section 362 prohibits commencement or continuation of the garnishment proceeding and the [creditor's] attorney, upon notification as to the filing in bankruptcy, is charged with knowledge that he may no longer proceed with the garnishment proceeding. He is the one who caused the garnishment proceeding to be filed, and he is the one who must see that it is dismissed. As an officer of the Court, he is duty bound to see that the law is enforced, and he thus has an affirmative duty to stop the garnishment proceeding through dismissal.

*In re Dennis,* 17 B.R. at 560. The court in *Dennis* rejected the argument made by the creditor's attorney that he failed to dismiss the garnishment on the belief any affirmative steps would be a violation of the stay, noting that this belief was incorrect and that, in fact, it was this very refusal which caused a violation of the stay. *Id.* at 561.

Similarly, in the more recent case of *Matter of Sams,* the court found an affirmative duty on the part of the attorney, concluding that the judgment creditor and his attorney violated the automatic stay by failing to stop a foreclosure sale which had been commenced prepetition once the creditor and his attorney had actual knowledge of the bankruptcy filing. *See Matter of Sams,* 106 B.R. at 490. As in the present case, the creditor and his attorney argued that it was the debtor or the trustee's responsibility to halt pending collection actions and that if the creditor

---

**9.** 11 U.S.C. § 362(a)(1) provides in material part that the filing of a petition operates as a stay of "the commencement or *continuation* ... of a judicial, administrative, or other action or proceeding against the debtor that was or could have been commenced before the commencement of a case under this title...." (emphasis supplied).

or his attorney had taken any action to stop the sale, they would have been violated the automatic stay. The court rejected these arguments stating that they "strain the boundaries of logic and the limits of advocacy." *Id.* The court noted that this responsibility is placed on the creditor and not on the debtor or trustee because:

> [T]o place the onus on the debtor, ... to take affirmative legal steps to recover property seized in violation of the stay would subject the debtor to the financial pressures the automatic stay was designed to temporarily abate, and render the contemplated breathing spell from his creditors illusory.

*Id.*, quoting *In re Miller*, 22 B.R. 479, 481 (D.Md.1982). *See also In re Stephen W. Grosse, P.C.*, 84 B.R. at 384 (attorney for the creditor found in contempt for failing to stop garnishment on the debtor's bank account).

Mr. Lufkin contends that the court should find no violation of the automatic stay because he in good faith did not understand the law, that the law has changed since he was in law school, and that in his 15 years of practice, this issue has never arisen even though he has a high volume collection practice. However, the courts are unanimous in their conclusion that a good faith mistake of the law, a legitimate dispute as to legal rights or even good faith reliance on an attorney's advice do not relieve a willful violator from the consequences of his act. *See* EPSTEIN, *supra*, and cases cited therein.

In *Mullarkey*, the court found that the attorney, who after the notice of the bankruptcy filing directed the sheriff to proceed with the foreclosure sale, had violated the automatic stay even though the attorney believed, based on his understanding of the law, that the property involved was not property of the estate. *Matter of Mullarkey*, 81 B.R. at 284. As stated by the court in *Mullarkey*, whether or not the attorney believed his actions were justified is of no consequence, all that is necessary to trigger section 362(h) sanctions is a willful act or willful failure in violation of the stay. *Id.* The willfulness requirement refers to the deliberateness of the conduct and the knowledge of the bankruptcy filing, not to a specific intent to violate

a court order. *Temlock v. Falls Bldg. Ltd. (In re Falls Bldg. Ltd.)*, 94 B.R. 471, 481–82 (Bankr.E.D.Tenn.1988), *quoting Wagner v. Ivory (In re Wagner)*, 74 B.R. 898, 903 (Bankr.E.D.Pa.1987). In the present case it is clear that despite his knowledge of the bankruptcy filing, Mr. Lufkin deliberately chose to take no action to stop the garnishment which he had put in place. This failure, regardless of any alleged lack of bad faith, was a willful violation of the automatic stay of § 362(a)(1).

■ Having concluded that Mr. Lufkin willfully violated the automatic stay, the court must determine the damages to which the debtors are entitled. Where a willful violation of the stay has been found, compensatory damages are mandated. *See In re Falls Bldg. Ltd.*, 94 B.R. at 482; *Matter of Mullarkey*, 81 B.R. at 284. From the evidence presented at the hearing on May 17, 1994, the only actual damages sustained by the debtors, other than the damages previously awarded by this court's May 4, 1994 order, are the additional garnished funds. Accordingly, the court finds that the debtors are entitled to recover compensatory damages against Mr. Lufkin in the amount of $986.40, which sum represents the six garnishment episodes which occurred between March 2 and May 11, 1994, at $164.40 each. Because all the garnished funds have been returned to the debtors, however, the court deems this portion of the judgment satisfied. The only additional compensatory damages to which the debtors are entitled to recover are their attorney's fees and expenses which have been incurred in connection with this motion. Debtors' counsel shall have fourteen days within which to file and serve upon Mr. Lufkin an affidavit detailing by date and time the services rendered and the fee and expenses requested. Mr. Lufkin will have ten days thereafter in which to object to the requested fee. Any objection will be heard at a date and time fixed by the court.

■ Debtors have also requested that punitive damages be imposed. The determination of what willful violations of the stay warrant the imposition of punitive damages is a matter left to the discretion of the bankruptcy court. *See, e.g., Allen v. Jim Walter*

*Homes, Inc. (In re Hartley),* 75 B.R. 394, 401 (S.D.Ala.1987), *judgment vacated upon settlement,* 80 B.R. 230 (S.D.Ala.1987).

> [P]unitive damages are awarded in response to particularly egregious conduct for both punitive and deterrent purposes. Such awards are "reserved ... for cases in which the defendant's conduct amounts to something more than a bare violation justifying compensatory damages or injunctive relief." To recover punitive damages, the defendant must have acted with actual knowledge that he was violating the federally protected right or with reckless disregard of whether he was doing so.

*In re Falls Bldg. Ltd.,* 94 B.R. at 482, *quoting In re Wagner,* 74 B.R. at 903–04.

■ This court is of the opinion that an award of punitive damages in this case is appropriate. Upon receiving a copy of the court's March 21 order, Mr. Lufkin was effectively placed on notice that the postpetition garnishment was a violation of the stay and that some action needed to be taken to stop the garnishment. The court's March 21 memorandum opinion even cited the case of *Dennis* for the proposition that a "creditor's attorney as officer of court has affirmative duty to stop garnishment process." Despite the court's ruling, Mr. Lufkin consciously chose to take no action to stop the garnishment, thereby allowing the garnishment and the resulting violation of the stay to continue. The statements made by Mr. Lufkin in his response to the present motion indicate that he was more concerned about the expense which would be placed upon his contingency fee creditor's practice and the fact that he would not be paid by his client if he undertook an affirmative act to stop the garnishment than the resulting harm to the debtors if he did not take any action to stop the garnishment. *See Motion to Set Aside Order of March 21, 1994 Under Rule 60 of the F.R.C.P. and Response to Motion Filed April 20, 1994 by Special Appearance* which was filed by Mr. Lufkin on May 5, 1994.

Mr. Lufkin asserts that since the court's March 21 order "did not require either Northside Hospital or its attorney to do anything," he may be excused from his inactions. The attorney sanctioned in *Grosse* also plead-ed ignorance in failing to take any action to stop a postpetition garnishment and dissolve a writ of execution after his client was found in contempt for violating the automatic stay and was ordered to pay *in terrorem* damages for every day in which the writ was not dissolved. *Id.* As in that case, this court similarly finds such an argument disingenuous since Mr. Lufkin was apprised of the fact that the garnishment of Mrs. Timbs' wages postpetition violated the automatic stay and, by continuing to remain inactive, put not only his client but himself at risk.

Mr. Lufkin's arrogance and disrespect for the automatic stay as interpreted by this court is plainly demonstrated by Mr. Lufkin's actions and statements after the court entered its March 21, 1994 memorandum opinion. Rather than taking the appropriate legal action which should be taken by a party upon its belief that a court has decided an issue wrongly, which is to act in accordance with the ruling but appeal to a higher court, Mr. Lufkin took no action to stop the garnishment until almost two months later and instead spent his time publicly criticizing the court's ruling. For example, in an April 21, 1994 letter to Charlotte McKeehan, Clerk & Master of the Carter County Chancery Court, the county wherein the judgment was obtained and the garnishment filed, Mr. Lufkin stated:

> I am somewhat concerned by a Bankruptcy Judge thinking that I have an affirmative duty to stop a garnishment....
>
> ....
>
> .... I am totally without information and totally in disbelief that the automatic stay of subsection 362 would require the affirmative act of a creditor.... It is absolutely ridiculous that [sic] creditor would have to bear the expense of legal fees, time and money to do that which the debtor's [sic] attorney could have done for two twenty-nine cent stamps.

■ In a letter to Lance Bracey, the head of the Board of Professional Responsibility of the Tennessee Supreme Court, dated April 28, 1994, Mr. Lufkin opined that the court's ruling of March 21 was unethical and asked for a review of the matter by the state

disciplinary board as to "whether or not this is proper for attorneys, whether federal judges or not, to be ordering creditor's counsel to do something that[j] so much benefits a debtor's estate and is adverse in interest to the client we represent."[10] Similarly, in the motion to set aside the court's March 21, 1994 order which Mr. Lufkin filed on May 5, 1994, he refers to the court's ruling as "ludicrous," the court's hearings as "meaningless under the law," and states that "he remains defiant." When questioned at the hearing as to whether he agreed that once the court ruled that there was an affirmative duty that this ruling constituted the law of the case, Mr. Lufkin's response was that "the higher law[11] is that it is the debtor's responsibility to stop the garnishment." Mr. Lufkin's actions represent an arrogance and defiance of the automatic stay as interpreted by this court and warrant the imposition of punitive damages in the amount of $5,000.00. "Where an 'arrogant defiance of federal law' is demonstrated, punitive damages are appropriate." *Matter of Mullarkey*, 81 B.R. at 284, citing *Tel–A–Communications Consultants, Inc. v. Auto–Use (In re Tel–A–Communications Consultants, Inc.)*, 50 B.R. 250, 255 (Bankr.D.Conn.1985).

An order will be entered in accordance with this memorandum.

---

10. Included in the letter to Mr. Bracey is Mr. Lufkin's statement that the court's opinion is a "fresh interpretation of subsection 362 paragraph [sic] for the state of Tennessee." *But see In re O'Neal*, 165 B.R. 859 (Bankr.M.D.Tenn. 1994) ("courts have widely held that a creditor with notice of a bankruptcy filing whose inaction allows a pre-petition garnishment to proceed unhindered postpetition violates the stay.")

11. Mr. Lufkin's reference to a "higher law" is disingenuous. In neither of the two hearings held by this court, nor in any of the eight responses, motions, documents and letters filed by Mr. Lufkin in this matter, consisting of over 35 pages and numerous arguments, does Mr. Lufkin cite a single case as authority in support of his contentions. When questioned by the court during closing argument at the first hearing as to whether he had any authority for his position, Mr. Lufkin stated that he was "relying on his fifteen years of experience." In response to questioning by the court at the May 17, 1994 hearing as to whether he engaged in any research at any time to ascertain the status of law as to his responsibilities as a creditor's attorney once a bankruptcy has been filed by a judgment debtor, Mr. Lufkin stated that he had sought the advice of two respected bankruptcy attorneys as to the "debtor's attorney's responsibilities." There is no evidence that Mr. Lufkin ever undertook any research to determine the extent of his duties or those of his client. *Cf. In re Falls Bldg. Ltd.*, 94 B.R. at 482 (punitive damages not imposed because attorneys undertook legal research to determine applicability of the automatic stay on their actions).